## SUPREME COURT.

### CHARLES A. CLEGG, appellant, agt. WILLIAM E. CRAMER and others, respondents.

*Counter-claims by defendants who are sued on alleged joint liability with others — Practice where such liability is denied — Such counter-claims allowed — Code Civil Procedure, section 1204.*

Where, in an action brought by plaintiff for the recovery of damages for the breach of a contract alleged to have been made by eleven defendants contracting jointly, the answer of three of the defendants denies the making of the contract alleged, but avers that the contract, whatever may have been its terms, was with the three defendants, and in respect to that sets up counter-claims:

*Held*, that such counter-claims are tenable and well pleaded under section 1204, Code of Civil Procedure; that these defendants were not concluded by the allegations of the complaint, but could deny the joint liability, aver a several liability as to themselves, and then set up their counter-claims; that the issue as to whether the contract was with all the defendants sued, or those who set up the counter-claims only, is an issue to be determined on the trial of the case, and if it should turn out to be correct, as the answer avers, the counter-claims would be legally applicable to any claim which might exist in favor of the plaintiff under the agreement or agreements (*Affirming S. C.*, 60 *How.*, 498).

*General Term, May*, 1883.

*Before* DAVIS, *P. J.*, BRADY *and* DANIELS, *JJ.*

APPEAL from an interlocutory judgment of special term, overruling plaintiff's demurrer to counter-claims pleaded in the answer of defendants Cramer, Aikens and Cramer.

Charles A. Clegg, an advertising agent, sued William E. Cramer, Andrew J. Aikens and John F. Cramer, joining with them as defendants eight others, declaring a breach on their

part of a contract with him for advertising in various newspapers.

The complaint alleges that at all times defendants Cramer, Aikens & Cramer, were and are co-partners, doing business under that name in the city of Milwaukee, as proprietors and managers of the Milwaukee List of Newspapers; and that they, with the other eight defendants, were jointly and severally engaged in printing and publishing newspapers in different parts of the United States.

The three defendants, Cramer, Aikens and Cramer, answer separately: Admit and aver that they were at all times copartners in that firm name, doing an advertising business as proprietors of space in the Milwaukee Newspaper Union; that as such copartners, and in no other capacity, they contracted with plaintiff; admit that their firm did advertising for plaintiff; that plaintiff paid money to the firm, and that the other defendants also did business with plaintiff, but not as alleged in the complaint. Their answer also denies the allegations of the complaint not specifically admitted or controverted. The answer then sets forth thirty-three contracts for advertising made with plaintiff, on each of which a specified sum is shown due, and asks for judgment.

The plaintiff demurs to the answer of these defendants on the ground that the counter-claims are not of the character specified in section 531 of the Code, and specifies that Cramer, Aikens, and Cramer, are sued jointly with the other eight defendants, and that a separate judgment as to them cannot be had in the action.

The court below overruled the demurrer on the ground that it might appear on the trial that the liability of these defendants was several, as they themselves aver, and not joint as alleged by plaintiff.

*Solomon Hanford* (*William H. O'Dwyer*, attorney) made and argued the following points:

I. The counter-claims are clearly inadmissible (*Code, sec.*

501). The liability sued on is joint only, and the rules to be applied are those relating to suits against joint debtors. These rules necessarily forbid the allowance of any such counter-claims as those in question, and the Code has made no change in these rules (1 *Bliss Code*, *p.* 370, *n.* [*e*], [*f*]; *Perry* agt. *Chester*, 53 *N. Y.*, 240; *Bridge* agt. *Payson*, 5 *Sandf.*, 210; *Mynderse* agt. *Snook*, 1 *Lans.*, 489; *Speyers* agt. *Fisk*, 3 *Hun*, 706). The view taken by the learned judge below is expressed in the following extract from his opinion: "The Code of Procedure now provides that judgment may be given for or against one or more defendants. The ultimate rights of parties on the same side, as between themselves, may be determined, and a defendant granted any affirmative relief to which he is entitled (*Code Civil Pro.*, *sec.* 1204). The former rule has thus been radically changed. Should it appear on the trial of this action that the defendants, Cramer, Aikens and Cramer, alone were liable, the plaintiff would be entitled to a judgment against them, while the complaint would be dismissed as to the other defendants. These defendants, in their answer, deny joint liability with others, averring it to be several, if any exists. They are entitled to a trial of this issue, and, if successful, should be allowed to urge their counter-claims" (*McIntosh* agt. *Ensign*, 28 *N. Y.*, 169). In the first place the learned judge is mistaken in his statement that there has been any radical change within any very recent period in the rules relating to the subject of suits against joint debtors. The case of *McIntosh* agt. *Ensign* (28 *N. Y.*, 169), which was decided in 1863, holds merely that in a suit against a number of defendants, sued jointly, the plaintiff may recover judgment against those against whom he proves a cause of action. It does not, nor does any other case that we are familiar with, hold that the change of law above referred to permit individual counter-claims to be set up in a suit on an alleged joint liability. In the second place, the learned judge is mistaken in holding that the defendants' denial of their joint liability can affect the character of the action. Can it be

held that because the defendants deny their joint liability the cause of action is in consequence joint and several in its character? The only cases where individual counter-claims have been permitted to be interposed are those in which the defendants' liability is clearly several, where a separate judgment could be obtained, and where, but for some statute, the plaintiff would have had to bring a separate suit against each defendant in the first instance (*Newell* agt. *Salmons*, 22 *Barb.*, 647). And in such cases as these the plaintiff would be at liberty to sever the action. In the present case, however, the cause of action is joint only. In other words, the liability of the defendants is simply that of copartners (*Baldwin* agt. *Briggs*, 2 *Abb. N. C.*, 216; *Peabody* agt. *Bloomer*, 3 *Abb. Pr.*, 360). Suppose, for the sake of argument, that each defendant in this suit should be permitted to set up his thirty or forty counter-claims, what would be the course of procedure at the trial? According to the opinion of the judge below, the question of the character of the defendants' liability, whether joint or several, would have to be determined first. But how would this be done? If his honor would have kindly indicated some method of procedure in this regard, the necessity for the present appeal might have been obviated. But unfortunately we are confronted with the principle that but one judgment could be rendered in such an action as the present, and that all the issues must be determined at once. Certainly, the case could not be tried by piecemeal, or in any other way than by putting in all the evidence on each side. At what stage of the action could it possibly be determined that an individual defendant might offer evidence in support of his own counter-claims? Again, suppose, for the sake of argument, that the plaintiff introduces all his evidence, and that such evidence tends to prove a joint liability on the part of all the defendants; the defendants, then, without attempting to disprove the plaintiff's case, introduce evidence in support of these one hundred and fifty counter-claims, and the case is then submitted to the jury.

Clegg agt. Cramer.

What kind of a verdict and what kind of a judgment or judgments would be entered? Bearing in mind that the plaintiff proves a joint liability to the satisfaction of the jury, and the defendants prove their separate counter-claims in like manner. It is submitted that any such rule as that contended for by the defendants would lead to more confusion in the administration of justice than the court will sanction at the present time. The effect of such a rule, it is needless to say, would clearly operate to effect a denial of justice. If it were to prevail, every unfortunate plaintiff could be called upon to try a vast number of issues. In this case he is tendered thirty-one by a single defendant, and everyone of such issues entirely unconnected with the main cause of action.

II. The judgment appealed from should be reversed and the plaintiff's demurrer sustained.

*Chauncey B. Ripley*, on behalf of the defendants (*Joseph S. Auerbach*, attorney for defendants Cramer), argued the following points:

I. These defendants in their answer deny joint liability with others, averring it to be several if any exists. They are entitled to a trial of this issue, and if successful should be allowed to urge their counter-claims (*McIntosh* agt. *Ensign*, 28 *N. Y.*, 169).

II. The common-law rule that upon a claimed joint liability of the defendants the recovery must be against all the defendants or none was abrogated by the Code; and now the Code not only authorizes but requires judgment according to the facts established against the defendants liable only, and dismissal as to the rest (*Brumskill* agt. *James and Eaglesum*, 11 *N. Y.*, 294, *followed by McIntosh* agt. *Ensign*, *supra*; *Code Civil Pro.*, *sec.* 1204; *Hubbell* agt. *Meigs*, 50 *N. Y.*, 489, *at foot, approving McIntosh* agt. *Ensign*).

III. It does not now depend upon the allegations in the complaint as to the joint liability of all the defendants, but upon the fact whether they are all liable; and if some are

liable and others not, the plaintiff may have judgment against such as the evidence showed to be liable. So if the answer deny joint liability and aver it to be several, a triable issue is thereby raised. 1. " These positions are well understood and have received the sanction of the courts; that defendant, upon showing that one of several plaintiffs is the sole party in interest, may avail himself of a set-off (counter-claim) in all respects as if the action had been brought in the name of such plaintiff alone; that where several persons are made defendants as upon a joint contract, and the plaintiff so declares in his complaint, but the proof shows that in point of fact only a portion of the defendants made the contract, the plaintiff can recover against such defendants as in fact were liable; that it does not now depend upon the allegations in the complaint as to the joint liability of all the defendants, but upon the fact whether they are all liable; and if some are liable and others not the plaintiff may have judgment against such as the evidence showed to be liable " (*Cowles and Curtis* agt. *Cowles*, 9 *How.*, 361; *approved in Palmer* agt. *Davis*, 28 *N. Y.*, 246, 247; *Code Pro.*, sec. 274; *Code Civil Pro.*, sec. 1204; *Brumskill* agt. *James*, 1 *Ker.*, 294; *People* agt. *Cram and White*, 8 *How.*, 151; *Zink* agt. *Attenburg*, 18 *How.*, 111; *the two latter cases disapproving Fullerton* agt. *Taylor*, 6 *How.*, 259; *Simar* agt. *Canady*, 53 *N. Y.*, 301; *approving Palmer* agt. *Davis*, 28 *id.*, 242; *Bathgate* agt. *Haskin*, 59 *N. Y.*, 533). 2. But the complaint itself alleges a " joint and several" relation and thus brings the case within *Parsons* agt. *Nash* (8 *How.*, 454), followed by *Newell* agt. *Salmons* (22 *Barb.*, 647, 651), and, also, *Briggs* agt. *Briggs* (20 *Barb.*, 447, 449).

IV. As a matter of pleading, the counter-claims become available to these defendants the moment a separate judgment is shown possible under the issues raised. That a separate judgment is possible under the answer denying joint and alleging several liability is shown above. (1.) Two sets of issues are uniformly involved when a counter-claim is pleaded

in the answer. In such case, no matter what be the form of action, whether legal or equitable, if plaintiff allege a joint obligation as to defendants, any number of them may unite in a separate answer, controvert the allegations of the complaint, aver a several contract between plaintiff and themselves, and as to that set up a counter-claim. That a joint judgment is also possible under plaintiff's theory does not exclude the allowance of the counter-claims, as a matter of pleading. Defendants, equally with plaintiff, are entitled to a trial of the issues raised by their own pleading; the court will determine the ultimate rights of the parties and grant any relief, affirmative or otherwise, which the proofs may justify. In actions alleging a joint liability and under the sections of the Codes above referred to, the general terms of this court and the court of appeals have held that a denial by defendants of joint liability and an averment of a several liability raises an issue which, if successful, renders available counter-claims set up by such defendants (*See Cowles* agt. *Cowles; Palmer* agt. *Davis; Code*, sec. 1204; *Brumskill* agt. *James; People* agt. *Cram; Zink* agt. *Attenburg, cited in point third, above*). (2.) The authorities cited by appellant (*Perry* agt. *Chester*, 53 *N. Y.*, 240; *Taylor* agt. *Root*, 4 *Keyes*, 335) are those of cases where actions were founded upon liability conceded to be either joint or several, with no issue made upon that subject.

V. No objection to the counter-claims is specified in the demurrer except the one already considered; none is, therefore, available on this hearing (*Code Civil Pro., sec.* 496); and since the counter-claims are in other respects well pleaded, all the averments are admitted by the demurrer under the rule (*Groesbeck* agt. *Dunscomb*, 41 *How.*, 302). And in this case such admission involves all the material averments of the first answer, for the first answer is renewed and repeated, and, therefore, adopted as a part of each counter-claim subsequently pleaded (*Hammond* agt. *Earle*, 58 *How.*, 426, 437, *and cases there cited*).

VI. Plaintiff's complaint is defective, and having himself

first committed errors in pleading he cannot prevail on this demurrer, even though the answer were insufficient *per se* (*People* agt. *Booth*, 32 *N. Y.*, 397; *Allen* agt. *Malcolm*, 12 *Abb.* [*N. S.*], 235, 237; *Stoddard* agt. *Onondaga Annual Conference*, 12 *Barb.*, 573, 575). The defects of plaintiff's complaint which render it demurrable are given below. I. Plaintiff's action is for damages for a breach of contracts, but there is no assignment of breach such as good pleading requires. The assignments are three only and as follows: 1. The aver ment "that defendants did then and there break the said agreements" is no sufficient assignment of breach under the rules of pleading, for a denial of it would raise no issue; it admits of no evidence; it would not support a verdict or a judgment; it is a conclusion of law, a mere nullity; no issuable fact is alleged (*Van Schaick* agt. *Winne*, 16 *Barb.*, 89, 95). 2. So the averment "then and there admitting that they had not kept but had broken their said agreement," is matter merely evidentiary and insufficient on demurrer (*Badeau* agt. *Niles*, 9 *Abb. N. C.*, 48; *Kelly* agt. *Waterbury*, 87 *N. Y.*, 179). Nor is it conclusive evidence even (*Mills* agt. *Gould*, 1 *Abb. N. C.*, 97). That the alleged admission is merely evidence for a jury and not matter to be pleaded; and that it is bad evidence because a part of it is withheld, to wit, "various facts and excuses in extenuation," there can be no question (1 *Greenl. on Ev.* [11th ed.], secs. 201, 218). Statement of partial evidence of a fact is not an averment of the fact (*Page* agt. *Boyd*, 11 *How.*, 415). "The issuable facts in a legal action, and the facts material to relief in an equitable suit, should be stated to the complete exclusion of the law and the evidence" (*Pomeroy's Remedies and Remedial Rights*, secs. 529, 526; *Steph. on Plead.*, 310). Matter evidentiary "is not capable of trial" under an elementary rule too well settled to need authority (1 *Chitty on Plead.* [16th *Am. ed.*], 566, 248, 249; *Fidler* agt. *Delavan*, 20 *Wend.*, 58). 3. The refusal, as alleged "defendants wrongfully and fraudulently refused further to print," &c., is not operative as a breach for the

reasons : First. It does not appear affirmatively, as the cases require, that the refusal was addressed to defendants, or to anyone on their behalf who had a right to demand or accept performance. It was not, so far as the complaint shows, a refusal *inter partis*. For aught that appears " it might have been a refusal answering to the plea, had it been addressed to a neighbor no way connected with the defendant, and of which he had never heard ; " " the declaration to a third person was not a breach." It should appear upon the face of the complaint that the refusal was addressed to the plaintiff or to his authorized representative " (*Traver* agt. *Halstead*, 23 *Wend.*, 66, 70 ; *McDonald* agt. *Williams*, 1 *Hilt.*, 365 ; *Thompson* agt. *Gould*, 16 *Abb.* [*N. S.*], 424, 428 ; *S. P.*, *Mills* agt. *Gould*, 1 *Abb. N. C.*, 93, 97). The breach of a contract, like the contract itself, must be *inter partis* (*Hart* agt. *Hart, Jr.*, 14 *How.*, 418, 424) ; a stranger cannot participate (1 *Pars. on Conts.* [*5th ed.*], 8). Second. The further averment " and did then and there notify the plaintiff of such refusal " is conclusive evidence that the refusal itself was addressed to some person other than plaintiff ; otherwise this averment would be without force (*Traver* agt. *Halstead*, 23 *Wend.*, 66, 70) ; " and, if it was entitled to any weight, could only be of use in relieving the plaintiff from liability for not being ready " (*McDonald* agt. *Williams*, 1 *Hilt.*, 366). Third. If the refusal itself was a nullity, it follows necessarily that any notice of it must be without legal force ; for a nullity furnishes no basis for any legal proceeding (*McNamara on Nullities*, 6 [1] ). Fourth. Another fatal defect is, it does not appear and there is nothing to show that any work was done when the refusal was uttered, that the time for performance had arrived. To render a refusal effectual as a breach, the time for performance must have actually arrived and passed, so that there remains no *locus penitentiæ*. For aught that appears defendants were under no obligation then to do anything ; they may have had time to perform in the future ; it is only when the day for performance has passed that an

Clegg agt. Cramer.

action can be maintained for refusal in our state. In England it is otherwise (*Shaw* agt. *Republican Life Ins. Co.*, 69 *N. Y.*, 286, 293); until this happens no legal right has been violated (*Burtis* agt. *Thompson*, 42 *N. Y.*, 246, 250); such is the well established rule (*Cases cited in* 69 *N. Y.*, 293; *Ford* agt. *Tiley*, 6 *B. & C.*, 325; *Franchot* agt. *Leach*, 5 *Cow.*, 506; *Traver* agt. *Halstead*, 23 *Wend.*, 66). Fifth. The characterizing words "wrongfully and fraudulently" add nothing to the badly pleaded refusal. "It has been repeatedly decided that the allegation that an act is 'unlawful' is not the statement of a fact, but a conclusion of law." (*Ensign* agt. *Sherman*, 13 *How.*, 37, *at foot*), and the rule is the same respecting characterizing words generally. II. Plaintiff fails to show by averment of facts that he has suffered any damage whatever; nothing appears upon the subject but legal conclusions. A pleading is ill on demurrer when, founded on a claim for damages, it avers nothing but the pleader's own inferences and conclusions. 1. Such vague generalities as "has been greatly damaged," "has sustained damages to the amount of," &c., are not issuable matter (*Van Schaick* agt. *Winne*, 16 *Barb.*, 89, 95). 2. Facts must be pleaded from which damages may appear to have arisen, such as, for example, that the work was not done; that some specific customer neglected to pay; that defendants omitted to do some particular thing that they were obligated to do under their contracts. Nothing of the sort is set forth in the complaint; not a single omission; only a refusal uttered to some third person of which plaintiff had notice. The averment of substantial damages is essential in a case like this, since a refusal is only a constructive breach, from which no damages flow. Damages must be pleaded and proved (*Allen* agt. *Gould*, 1 *Wend.*, 182, 185; *Thompson* agt. *Gould*, 16 *Abb.* [*N. S.*], 424, 428; *Rider* agt. *Pond*, 28 *Barb.*, 447; *Mills* agt. *Gould*, 1 *Abb. N. C.*, 97). The foregoing authorities hold distinctly that the breach claimed in such cases is not actual but constructive merely; that a refusal

Clegg agt. Cramer.

operates as a breach by reason of prejudice to plaintiff arising from the refusal. If there is no damage there is no breach. The damage of the refusal is the gist of the breach. If there is no damage, no withholding, no neglect or omission, in short, if the refusal is naked, no right is violated, and consequently there is no breach. Performance must be shown to be due, that the refusal may take effect (*Traver* agt. *Halstead*, 23 *Wend.*, 71). III. Plaintiff's agreement of August 1, 1876, in which the previous agreements are merged, is an agreement with and on behalf of defendant Aikens alone; it so appears on its face, and any mere allegation of plaintiff that it was made on behalf of all the defendants is simply his own erroneous legal conclusion, inconsistent with the express language of the letter itself; the court will construe the agreement and determine who are bound by it and to what its provisions relate; it is a question of law not pleadable (*Latham* agt. *Westervelt*, 26 *Barb.*, 261 ; *Barton* agt. *Sackett*, 3 *How.*, 358). The agreement is the best evidence of its own meaning. It is addressed to defendant Aikens, and accepted by him; and as to the descriptive words, "Pres't American Newspaper Union," they are surplusage so far as the contract is concerned. So the word "president" affixed to the signature, "A. J. Aikens," at the end, is descriptive merely, and of no legal force, as has been repeatedly held respecting contracts (*De Witt* agt. *Walton*, 9 *N. Y.*, 571). Besides, there is nothing in the complaint showing that defendant Aikens held any office or had any authority, as president, to bind other defendants ; nor is there any allegation that he was in fact president, or that he was known as such. IV. The complaint is demurrable because a part of the defendants are not connected with the transactions therein referred to between May 3, 1876, and January 2, 1877, except as guarantors and on an alleged collateral liability which is not supported by any consideration moving from plaintiff; and it so appears on the face of the complaint. Such defect renders a complaint bad on demurrer (*Le Roy* agt.

*Shaw*, 2 *Duer*, 626). Moreover, such allegation would not warrant a judgment against all the defendants on a joint liability, and therefore the complaint is demurrable under the very principle for which plaintiff himself contends on this hearing. V. The judgment for defendants Cramer, Aikens & Cramer, overruling plaintiff's demurrer, should be affirmed, with costs.

DANIELS, *J.*— The action was brought by the plaintiff for the breach of a contract alleged to have been made with the defendants for the publication of advertisements in various newspapers printed in different portions of the United States, and for the recovery of an amount alleged to have been paid for the expenses of advertisements not actually made. Three of the defendants answered, alleging in substance that the contract, whatever may have been its terms, was made with them, and then by way of further defense they set forth a large number of counter-claims upon the contracts alleged to have been made with them by the plaintiff, which he failed to perform. And it was to the portions of the answer presenting these counter-claims that the plaintiff demurred. His demurrer proceeded upon the ground that as the counter-claims were not alleged to exist in favor of all the defendants in the action, that they were improperly set forth in the answer of the three defendants. And this position would undoubtedly be true if the answer concedes a joint liability to the plaintiff by all the defendants. But it did not. The three defendants answering in effect alleged that the contract was made exclusively with them. And if that fact shall be established at the trial, then the complaint must be dismissed as to all the remaining defendants. For even if it be assumed that a joint contract has been set forth in the complaint as the ground of the action, the court at the trial can still award judgment in favor of the plaintiff against these three defendants, if as a matter of fact it shall be made to appear that they were the only persons liable to the plaintiff (*Code Civil Pro.*,

*sec.* 1204; *McIntosh* agt. *Ensign,* 28 *N. Y.,* 169). And by the answer of the three defendants they asserted that to be the nature of the liability. They were not concluded upon this subject by any allegations contained in the complaint, but were at liberty to deny the alleged joint liability, and further to allege the fact to be that whatever contract had been made was made. by themselves with the plaintiff. And if they should turn out to be correct in those allegations, then the action would become an action between the plaintiff and themselves, and in that contingency the counter-claims set forth by them in their answers would be legally applicable to any claim which might exist in favor of the plaintiff under the agreement or agreements relied upon by him. This was an entirely proper mode of proceeding. The three defendants were clearly entitled to aver that the liability relied upon by the plaintiff was wholly confined to themselves, and to follow that averment with such counter-claims as existed or might be alleged to exist in their own favor against him. This was the course of practice which they followed. It was entirely right, and the judgment from which the appeal has been taken should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concur.