KATHARINE McMAGH, Respondent, v. FRANCIS H. RUHE, Appellant, Impleaded with WALTER J. FENSTERER, Defendant.

First Department, May 14, 1920.

Partnership — action against partnership for alleged services rendered — evidence — when appellate court not entitled to charge partner individually.

Where in an action to recover for work, labor and services alleged to have been rendered to a partnership, it was claimed that the employment was not binding upon the partnership, nor upon one of the defendants individually, it was error to exclude a question on the cross-examination of plaintiff's assignor as to what benefit the services could be to such individual defendant, there being a hopeless conflict of testimony in respect to whether the alleged agreement of hiring was made with that defendant for his personal benefit.

Where there is no appeal from a reversal by the Appellate Term of a judgment against one of the partners and the dismissal of the complaint as against him, and the only appellant is the other partner who claims that there was no contract binding upon the firm, or upon him, the Appellate Term has no power to find that said appellant had personally obligated himself to the plaintiff, no such claim having been advanced by plaintiff at the trial and there being no such finding by the trial court.

APPEAL by the defendant, Francis H. Ruhe, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of Bronx on the 19th day of December, 1919, affirming as to the appellant

a judgment of the Municipal Court of the City of New York, Borough of Bronx, Second District, and reversing said judgment and dismissing the complaint as against the defendant Fensterer.

*Frank R. Greene* of counsel [*Harold James Baily* with him on the brief; *Theodore L. Frothingham*, attorney], for the appellant.

*J. Solon Einsohn*, for the respondent.

Gʀᴇᴇɴʙᴀᴜᴍ, J.:

The action was brought against these defendants as " copartners engaged in the glass business  *  *  *  under the firm name and style of Fensterer and Ruhe."

Briefly stated, the complaint alleges the due performance on the part of the plaintiff's assignor, one Momand, of certain work, labor and services at the special instance and request of the defendants in connection with the preparation and installation of 100 pressure lamps at Long Beach, N. Y., at an agreed salary of $100 per week. It also alleges that the services rendered pursuant to the agreement extended over a period of eight weeks and that there became due and owing thereunder the sum of $800, no part of which has been paid.

The case was tried before the court without a jury and judgment rendered against both defendants for the full amount claimed. The theory upon which the Appellate Term determined the appeal was, that the evidence established that the alleged agreement of hiring which was made through the defendant Ruhe was not binding upon his partner, Fensterer, the other defendant, and that the defendant Ruhe being personally liable, judgment should be rendered against him individually under the authority of *Stedeker* v. *Bernard* (102 N. Y. 327), which holds that where in an action against several defendants on an alleged joint contract it appears that plaintiff is entitled to a separate judgment against one of the defendants, the trial court may render judgment against that defendant individually.

Plaintiff's assignor, Momand, testified without qualification that he was employed by " Fensterer and Ruhe " to superintend the testing and installation of certain street lamps

at Long Beach for which that firm was to pay him $100 per week, and at no time claimed that Ruhe individually had hired him. The testimony further shows without contradiction that at the time when the alleged contract of employment was made, and for several years prior thereto, the defendant Ruhe was president of a company known as the Public Lighting Service Corporation, of which Momand was the consulting engineer in active charge of its street lighting work and particularly so of a certain contract which it had with the city of Newark, and that during all this time he was paid for his services by the Public Lighting Service Corporation.

It was uncontradictedly shown that Ruhe was the largest holder of stock in the company and was in the habit of advancing moneys to it from time to time for the payment of its obligations, his method being to draw checks upon his own firm's bank account which were charged against his personal account on the firm's books.

There was also a concern known as the Pressure Lighting Company of which Momand was the vice-president and a stockholder. Its principal assets seem to have been a certain patented pressure lamp used in connection with gas lighting which was the invention of Momand.

Momand testified as to the conversations which he claimed resulted in his employment, as follows: That Ruhe told him that he had met a Mr. Newbold of Philadelphia, who was vice-president of the Welsbach Street Lighting Company of America, and called his attention to the pressure lamp which would relieve one of the difficulties in the gas lighting business due to the high cost of labor and materials; that Newbold stated that he would have nothing to do with Momand as they had been very bitter competitors for many years in street lighting work throughout the United States; that Ruhe convinced him that it was foolish to allow such matters to interfere in a case where it would be to his advantage to utilize the pressure lamp; that thereupon Newbold asked Ruhe if Momand could construct a pressure lamp in the form of a burner to be used in the lamps of his company; that Momand thereupon suggested to Ruhe that Newbold send over one of the lamp heads used by his company and Momand would place one of his burners therein which could be shown New-

bold; that a few days later Fensterer and Ruhe sent over a lamp head and Ruhe told him that he would have Newbold come over and look at it; that a few days thereafter Newbold did come over pursuant to an appointment, and Momand's secretary demonstrated the efficiency of the pressure lamp.

Momand also testified that he saw Ruhe a couple of hours after the demonstration and was told that Newbold was well satisfied with the lamp which he had seen, and had given him an order for 100 lamps to be used at Long Beach, where the Welsbach Company had a lighting contract, in order to show their advantages to his directors. He stated that Ruhe told him that Newbold would pay for the entire cost of installation, and told him to spare no expense, and hurry it up and get it in as good shape as possible. Momand then stated: " I told Mr. Ruhe that I would have nothing to do with Mr. Newbold. * * * I told him that the work would entail a great deal of extra labor; that I had my regular work to attend to; that I was looking after my lamps in Newark; that I * * * would want $100 a week for my time for the installation at Long Beach; and furthermore, I told him I would have nothing to do with Mr. Newbold; I will do this work for your firm [meaning Fensterer and Ruhe]; " that Ruhe said, " ' that is all right, I understand what your relations have been, you go ahead and do the work.' "

Upon cross-examination Momand was asked whether he or the Pressure Lighting Company was benefited by the installation of the pressure lamps which were to be made for Newbold's firm. He answered, that it was not his idea that it was a benefit to his company. He then was asked these questions: " Why did you go into it if it was of no benefit to your company? A. I was willing to do this work for Mr. Ruhe if he paid me for it. Q. What possible benefit could it be to Mr. Ruhe personally? Plaintiff's counsel: Objected to. The Court: Objection sustained. Defendant's counsel: Exception."

The learned court clearly erred in not allowing this question upon the cross-examination. Ruhe in his testimony absolutely contradicted Momand as to any agreement to pay him $100 per week or any other sum for the installation work. He testified that the work was to be done for Newbold; that he

had told Mr. Momand that this was the last chance to prove whether his Pressure Lighting Company was any good or not, and, therefore, to take pains in installing this equipment; that he never stated to him that it was a " Fensterer & Ruhe matter," or that it was an " F. H. Ruhe matter," but that it was a Public Lighting Service Corporation matter.

The record of the trial shows that Newbold had a representative at Long Beach when the pressure lamps were being installed.

Sufficient has been stated to indicate that there was a hopeless conflict of testimony in regard to the alleged agreement of hiring. Momand was an employee of the Public Lighting Service Corporation and was interested in the Patent Pressure Lighting Company, which he admitted was in a hopeless tangle at that time. Fensterer and Ruhe were engaged in a business wholly foreign to the gas business and were not interested as a firm in any of these matters. Ruhe was advancing moneys to the Public Lighting Service Corporation and was anxious in behalf of that company to interest Newbold in the hope that the Welsbach Street Lighting Company would buy out both the Pressure Company and the Public Lighting Company.

The trial court evidently decided as it did because it accepted Momand's version of the hiring, which was that he had been hired by the firm of " Fensterer & Ruhe." There was no finding that Ruhe individually had employed Momand. The Appellate Term was justified upon the state of the proofs in holding that the trial court's conclusion that the defendants had obligated themselves as a firm to Momand was contrary to the weight of the credible testimony. If the testimony established that Ruhe personally had obligated himself to Momand, the Appellate Term might have been justified in disposing of the matter as it did and directing judgment against Ruhe individually, under the authority of Stedeker v. Bernard (supra).

We thus have a situation in which Momand made no claim at the trial that Ruhe had personally promised to pay him for his services, and where the defendant Ruhe by reason of a direction of judgment against him personally by the appellate court would be deprived of his day in court to show

that he was not individually liable for the claim of Momand and that he was acting in behalf of the Public Service Lighting Corporation and to interpose any affirmative defenses or counterclaims personal to him.

In view of the fact that the trial court did not find Ruhe individually liable, and that the appellate court reversed the trial court's finding and considering that the proofs were conflicting, an appellate court would scarcely be warranted in finding as a fact that Ruhe had personally obligated himself to pay for the alleged work performed by Momand. We are of opinion that the court should have reversed the judgment and ordered a new trial. There is, however, no appeal to this court from the reversal of the judgment as against Fensterer and the dismissal of the complaint as against him. The only appellant is the defendant Ruhe.

The determination of the Appellate Term, so far as it affirms the judgment as to the defendant Ruhe is reversed and a new trial ordered as to said defendant, with costs to the appellant in all courts to abide the event.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Determination so far as it affirms judgment as to defendant Ruhe reversed and a new trial ordered as to said defendant, with costs to appellant in all courts to abide the event.